Our third case is number 21-11763, Jesus Rodriguez et al. v. BB & T. Let's talk if we can for a second and I'll ask Mr. Hendricks the same thing on the other side. When you get up, when you get up, don't worry, about the stay issue and the discovery. Tell me what you think we should do and then don't start his time yet and then we'll launch into your argument. So the court decided to carry that issue with the case. As a result, I really don't know what we can do from the appellate court side to review newly discovered evidence. In other words, if we were at the district court level, we would be able to take additional discovery and I could answer that question better. Have you actually looked at the documents? I have looked at the documents that they have provided and they are significant. As a matter of fact, they relate directly to some of the issues at hand. I took the deposition, for instance, of Alan Wilson in North Carolina. Asked that man for I don't know how many minutes, how many pages of transcripts about the logging in and logging out, the documentation about that, the IP addresses, etc. He knew nothing, basically nothing. And now we get an Excel sheet that outlines exactly, and of course an Excel sheet is just a capture of like an outline of the data. Behind all of this, there must be metadata that I can ask about to determine whether an email ever even went out. Did that email carry an attachment such as a statement? And specifically, how is it that on July 21st, the credentials and password were changed? What does the SBO login mean? What do you, this is not the time to sort of get into all of that or what it can mean or not, but what would you like us to do from your perspective? Well, I would love for this matter to be able to be decided on the merits. However, I cannot forego an opportunity for my client to really have adequate discovery on any of these issues. So I am obligated to ask for a remand for the limited purpose of conducting additional discovery. I will point out, however, that should the court find that notice, because there is one fact that is not disputed. Our clients did within the course of a year, actually from November when the last wire transfer took place to March, notify the bank, right? So if we fall within the one-year statute of repose, that one fact is determinative, but... Well, not on everything. Not on everything, but because then we have to deal with the 30-day issue, and on that we have several statutes, 501 and then 201 and 202, and the commercial reasonableness argument, et cetera. But, unfortunately, my hands are kind of tied in terms of what I can request and what I should request, and I believe that with the newly discovered evidence, we are obligated to go back to the district court, take additional discovery. I will probably have to take depositions of all these witnesses again. Maybe they will finally designate the appropriate witness to answer the right questions about all of this and go on from there. You mean the corporate representative? Yes, sir. That's a good question. So would your suggestion be that maybe the whole thing should be remanded because this level will be a Rule 60 motion? I think that the factual predicate upon which the court rendered its ruling has been undermined by the newly discovered evidence, and so we really can't say that the judge had an opportunity to look at all the facts when rendering that opinion, and he made specific findings such as our client did have access to their account when that's not the case, and factually, we now know that more than we did before. So your thought would be that we should rule on the pure issues of law that are not influenced in any way by the facts and remand otherwise for the district court to consider whether there should be additional discovery? I mean, I'm trying to get specifically what you want. Well, I'm going to have to ask for a remand. What I'm saying is I think there is an opportunity for the court on the legal issue whether 504 the statute of repose can actually be reduced by 501 appropriately or whether it's the other subsections 201, 202, and 204 such as in the Chavez case that really apply, but I feel obligated on behalf of my client to say that I have no choice but to let the court know that newly discovered evidence renders the opinion of the district court invalid because it's undermined factually. Just to be very clear, and if I could ask you to just in one sentence, tell us what ideally you want us to do. Do you want us to determine the pure legal issues and remand the rest of it? Do you want us, like, what specifically would you like us to do? I have to ask to be remanded because the pure legal issues, I have to ask to remand because the factual predicate upon which the order is based is now undermined by the newly discovered evidence. I have no choice. Okay. And I understand that. Do you also want us to determine the pure legal issues? I think that the court can. The pure legal issue, which is, does 501 actually authorize 505 and then whether or not commercial reasonableness was, when the decision was made as a question of law, that there was commercial reasonableness. Was that appropriate? Wait, wait, wait. Those are separate things. Yes, they are. Yes. Those are separate things. So I think none of us is trying to create problems for you or be difficult, but we're not. No, I understand. I appreciate it. And we're not. Mr. Hendricks is going to get the same questions on the other side. You want a remand. Yes, sir. You want us to rule on certain issues of law. Tell me exactly what those are. The ones that you would like a ruling on before there's a remand. So the first one is whether or not the one-year limitations period can be amended. Correct. Right? Okay. What, if anything else? The second would be the definition of commercial reasonableness under these circumstances. Under the statute, when— But that's not a pure question of law. No, it isn't. But you want us to—that's okay. No. We're just asking you for your preference. You want us to decide that issue on this record? It's a tough decision to be in because— I know. I know. Just be honest, though. Could that actually be changed by what you might discover? Yes. Yes. Because— Okay, so the question is, do you want us to tackle it or not? You understand, for us, that means we'll be back probably to see this court in a couple years, but the answer— I know that. I know that. Yeah, plus making us read all this record twice. I'm not blaming any of you for any of this. I'm just—we're trying to figure out what you want us to do. If we can come to some sort of an agreement about what we should do procedurally and if that makes legal sense, great. If not, that's fine, too. That's what we're here to do. Right. Resolve disputes. So, I don't want to put words in your mouth, but what I hear you saying now is you want to remand with the exception of a ruling on the one-year period and whether it can be amended or shortened. Yes, I think that that can be done without the factual basis that would be necessary, for instance, to deal with commercial reasonableness and the three parts of that statute, which deals with the circumstances of each particular client, et cetera, et cetera. That's factual in nature, but the 505-501 interplay, I think, is a strictly legal question. Okay. Can I ask you a follow-up to that? Yes. With respect to the commercial reasonableness question, and I have no idea how we're going to decide that. We haven't talked about it, and this is just a hypothetical. Yeah. So, if we thought that on this record, as it currently exists, that your client could satisfy that standard here, would you want us to rule on that at this time? Would that make things clearer and easier for the district court, or in other words, only if it would be to your disadvantage? And I'm going to ask the same question to the other side. I'm wondering whether there's anything further, and again, this is hypothetical. If we thought that your position was correct on the current record, is there anything, I mean, additional discovery couldn't help you anymore? I guess the question is, could it undermine the position? I guess it... And then I guess I would ask opposing counsel in that case if there's anything, if we thought that it was commercially reasonable, if there's anything, or that it wasn't commercially reasonable what was done, that if there's anything from the discovery that might possibly have an effect on that. And again, I'm not saying that that's what we would hold. I don't know. I understand. But I'm just trying to figure out, what I'm trying to do is, I think it's important for us to rule on whatever issues are, I want to help the district court the most that we can. And so that's what I'm trying to establish is whether there's any value in ruling, and it may be, you know, maybe we look at it and we say, well, on this record, we're not sure that you're there on commercially reasonable, in which case I understand your position to be, well, give us another chance because we don't know what's in the rest of these records. Correct. So, there is more of a factual argument to be made on commercial reasonableness. But the bottom line is the following, there's a security protocol and they need to follow it. Right. But we don't want to have the argument. No. And I understand. But just so that I can make the position clear, whether we are affected by a ruling from this court or not, it will boil down to certain things that are factually intensive, fact intensive. Okay. Fair enough. Thank you. Okay. Thank you, Your Honor. So, we don't lose the train of thought. If you don't mind, go have a seat. Let me talk, let us talk to Mr. Hendricks about that issue and then you'll have your full, your full time for argument. Sure. Good morning, Mr. Hendricks. Good morning. Okay. So, tell us what you think we should do procedurally. I think procedurally, there's a couple of issues of law, straight law that are well documented and are part of the record. The first is the notice issue. Can 505 be amended? Does 501 allow the amendment of 505? If it does. And if the 30-day notice rule applies, the Article 4A claim is easy to rule on. There's a notice issue that's also a matter. My friend and distinguished counsel raised the Chavez case. That's a notice issue. It has to do with whether there's legal notice in this particular case. That can also be ruled on. The additional documents that were discovered by my client and forwarded to us after the contract action. And they go to a maintenance of breach of contract action regarding facts that are in the record. Facts that are already agreed upon between the parties as agreed facts between the parties. They can add more color. They can perhaps detract from, but all the facts regarding the maintenance of the breach of contract action that are aided by the additional documents handed over after the appeal, there's a link in the agreement of the facts between the parties already. There was, throughout and replete throughout this briefing, claims of discovery violations or something of that sort prior to maintenance of the appeal. That can also be referenced by this court docket entry number 76 in the lower record. Plaintiff filed a motion to continue the trial. Again, this is in the record. That motion was denied by docket entry 76 where Judge Moore said, look, everything you're doing in terms of these depositions, the depositions mentioned here today, I want you to go to the magistrate and file the appropriate motions with the magistrate. No motion was ever filed. No motion to compel in the lower court, at any court, was ever filed. So when raised with, in the appeal section, and it was carried with this case, I think appropriate as well. If there are additional facts that can go to maintenance of the breach of contract action, if it were to survive, that's fair for further analysis. However, Judge Moore's specific ruling in the breach of contract action was that each and every individual claim raised in the breach of contract action in the complaint is not actually a duty or an obligation under the contract between the parties. Okay. So let me just make sure that I've got both of you on the same page. You both believe that we should resolve the question of whether or not the one-year so-called limitations period can be amended by the parties, right? You both agree to that? And you think that there's another question, Mr. Hendricks, about legal notice and Chavez, which could possibly also be resolved? Yes, Your Honor. But otherwise, you both agree that we should retain jurisdiction, send the case back down, let everything be aired out with regard to these new documents. They may or may not be relevant. They may or may not be dispositive. They may or may not be helpful. Let the district court have a look at them, figure out what it's going to do. And once it's done, it can send the order and the case back up here. Is that appropriate in your perspective? Yes, Your Honor. Okay. Mr. Hendricks? I don't believe that was my position exactly. My position was that Judge Moore entered a detailed ruling as to what the plaintiffs claimed in their breach of contract action. And that each of those claims does not rise to an actual breach or provision in the contract itself between the parties. So you want us to resolve the breach of contract claims as a matter of law? I think it can be under Judge Moore's ruling, yes, and under the appropriate standards of his review. Okay. All right. Thank you both very much. Thank you, Your Honor. Okay, Mr. Villesante. Now your clock is going to start. And since we've, since both of you agree that we should at the very least take up the one year limitations period, why don't you start with that? Yes, Your Honor. But in brief response to my friend's last statement, the breach of contract claim is factually intensive. And so it's not just a legal question. And because the facts now include new evidence upon which I'm entitled to take additional discovery, the basis of the opinion is undermined by the fact, by the reality that the judge didn't have all the facts. So with that said, I point out to the Court that subpart 501 of the statute is titled the Funds Transfer System. In other words, the parties under 501 seem to be banks. It is part of the statute which controls the relationship between banks that use the Funds Transfer System. And what can be amended are those rules to fill in gaps so that the banks can work more easily together. I understand that the first paragraph seems to say it can be amended by agreement. But when read in context and read with the notes, the official notes, it seems to apply to the Funds Transfer System and the parties that are mentioned in the statute are the banks. I point out the difference between that and what we find, for instance, in priority staffing. In priority staffing, the Louisiana statute that was reviewed was statute 103, coincidentally, which is titled Variation by Agreement. And unlike and in distinction to the 501 statute in Florida, it does not make mention of anything else, not the Funds Transfer System or any other part of the code. So it specifically relates to amendment by agreement of the entire code. And I think that the intention of 501 was not to allow for really what would be very difficult, especially for clients like mine living abroad, to be reduced from a one-year statute to maybe 30 days. You have to take into account the circumstances of the account holders. But my position is that that was not what was intended. Now, with respect to the applicability of Chavez, Chavez is interesting because it's very similar factually in this case. And what the court was reviewing, though, was the subparts 201 and 202 of the statute, not 501. And what they determined was that the bank established that it was entitled to apply other procedures as part of their security protocol. And I just bounced a little bit. I'm sorry, but the first part of the conversation took me. But the first, I'm sorry, I just lost my train of thought. In Chavez, the determination was that the bank could or could not actually use procedures that the client had not agreed to. And here in this case, we have a very similar situation, which is that in 2016, someone literally walked into the bank and filled out a form that says, disable the security procedure. That's in the record. That person was a fraudster, was an imposter. Our clients never agreed to not having a dual authentication protocol in their accounts. That they never agreed to. Consequently, they should not be bound by what happened as a result of that. In this particular case, our clients never came to the United States in 2016, could not have done it. That is not a fact in dispute. And my position is that the provision of whether or not our client, the fact that whether or not our client agreed to the protocols in 2016 is not in question. They were not in the United States, a fraudster signed, you know, instead of them. And that has created all of these issues. Secondly, part of the protocol is that supposedly verification requires a phone call. Let me go back a second before we get into that issue. And that's about the one year period. So the language of 670.501 is that except as otherwise provided in this chapter, the rights and obligations of a party to a funds transfer may be varied by agreement of the affected party. I think you are relying on the provision of another section that says that the obligation of a bank to provide a refund is not affected. Correct. But you can't read that provision completely broadly because you'd wipe out the one year period too, right? You're saying that even if you miss the one year period, the bank still has to refund? No, it's clear that the bank must refund as long as the account holder makes a claim or puts them on notice at least within that one year period. But the question becomes whether or not you can modify that one year provision, right? That is correct. That is correct. And what I was referring to is that even by the title of Section 501, it is referring to the effect of funds transfer system rule. And when reading it in context and reading the official comment, it seems to be that the parties that are involved are the banks. The banks that operate under the funds transfer system rules. It's not the account holder and the bank. And so, I believe that priority staffing can be a guide because in priority staffing, the in Louisiana, does not deal with anything other than variation by agreement. This seems to be variation by agreement between banks under the funds transfer rule. So with that, my request to the court is that this matter be remanded to the district court for additional discovery on the basis of the untimely production and rule on the legal question whether or not 501 can be used to amend by agreement Rule 505. All right. Thank you very much. You've saved your time for rebuttal. Hello again. Whenever you're ready. Thank you, Your Honor. Let me go first to the 501 versus 505 issue as raised by my friend. 501 allows modification of the rights and obligations or a specific terminology I'll get to in a minute. In the Article 4A clauses of the UCC as adopted in Florida 670.501.505. 505 sets a one-year time frame, a 12-month time frame for notification by the customer. 505 creates an obligation on a duty by a customer to the bank. 502 and 504 are the operative provisions that create obligations from the bank to the customer. 505 is silent as to 502 and 504. 502 and 504 are silent as to 505. The obligations created by the bank in 502 and 504 are obligations created by the bank. The obligation created for a customer in 505 is an obligation of the customer. With that distinction, the question is, can 505 be modified by terms of an agreement between the parties? It is not in dispute that parties agreed to modify 505 in a 2013 Treasury Management Agreement. They absolutely modified it to 30 days. Can I ask you a question, though, about the law here? You would agree that Section 501.1 says, except as otherwise provided, right? Yeah. Okay. So, Section 670.204 seems to me like it may otherwise provide, and I wonder if you could comment on that. That's the section that requires banks to refund money that was fraudulently transferred. Right. That section refers to a time period of 90 days in the 204 section. Yes, but the time period of 90 days relates only to, so here's the thing about that section, right? That is, the question is then, if you don't do it within 90 days, then all you can get is what was transferred. But if you do it within 90 days, and it doesn't have to be 90 days, it just has to be a reasonable period. If you do it within that reasonable period, then you can also get your interest, right? And so, I mean, it seems to me like that is, I mean, you couldn't have a 90-day period or a reason. I mean, it just seems to me like that is talking about how it would be that you would get your, that it goes to the refund. In other words, it's a given, it's a bottom line that you're able to get the refund. The only question is whether you can get the interest. And the period of time that you can modify that 90-day period is with respect to only the interest. And if you read the commentary, it seems like it's pretty clear, at least it seemed to me, that the concern here was that people should be able to get at least the transferred amount back if they did it within the one-year period. Why is that not the case? Okay. That's the whole crux of this particular issue. I absolutely agree. The 90 days can be modified, that time period can be modified, and that's in the section and in the commentary. The commentary, the last words of that section, by the way, are, as applied to this section. And it doesn't anticipate the 505. So there's a right or an obligation, rather, there's an obligation the bank has to make good on a wire if we're noticed in a timely basis. What is the time? That obligation cannot be eradicated by contract. The bank can't enter a treasury management agreement with the plaintiffs to say, under no circumstance can you come back to us on a wire, make a claim on a wire. There's no question that is a right that they have to make and an obligation the bank has to pay on a wire, even one deemed to be an ineffective wire. So the question becomes, did the bank eradicate that right? Did the bank make that right a lesser right or violate 204 and 202 by saying, you no longer have the right and we have no obligation to make good on it? This is where the Rigato's case comes in. The Rigato's case, I don't want to get in trouble with the Second Circuit, but we don't think they got that right. In the Rigato's case, the... They interpreted the same language, right? It's identical language. The New York courts adopted the same UCC provision that the Florida courts adopted, as did Tennessee, Louisiana, Mississippi, and Minnesota, the other district courts that have ruled on this issue. Rigato's has been ruled on the same way by the Elliott case in Tennessee and the Jesko case in, what was that, Mississippi. Mississippi. However, Louisiana courts and the Minnesota courts have picked up our position that that's not what 505 does. The 505 can, in fact, be modified. So the question is, does the Jesko court allow for that? Why does the Jesko court not allow for that modification? A couple things. One, the Jesko court makes a determination, and I said earlier I was going to focus on the words rights and obligations. The rights and obligations is found, is a language throughout 202, 204, 505, 501. Rights and obligations. Well, the Jesko court determined that the time period in 505 was not a right and obligation and more of a jurisdictional issue. The priority staffing and Bonema case, sometimes called the Steps case, ruled that it, in fact, is in more line, along the lines with a statute of repose. In fact, the UCC commentary calls it like a statute of repose. And a statute of repose, under 11th Circuit laws decided by this court, I think a different panel, ruled the statute of repose, in fact, a substantive right. So is it a substantive right in 505 to do a year, and can that substantive right be modified because 501 says it can be modified? The bank is not doing away with its obligation to make good on this wire. It's limiting the time period to announce the problem with the wire. What if it said, what if it said in its contract, instead of 30 days, you have one day from one, you know, when we send you your statement out, would that be okay? One day, I agree with, I would agree with any analysis that says one day seems awfully short and is almost meaningless. I would agree with that. Where is the limiting principle coming from then? I think the limiting principle comes from commerce and it comes from the UCC itself. Where are the time frames in the UCC? By correlation, and they're not the same statutes, but by correlation, Florida law has allowed 674.406, which is the same kind of time limitation, but for items or checks. Yeah, but here's why I'm not sure that applies. So for the beginning of the section where it talks about transfers, it says specifically, the commentators wrote that a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks, and establish limits on liability, rather than to rely on broadly stated flexible principles. In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to ensure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in fund transfers. In other words, the point is, I'm not sure that we can draw the analogy to the, you know, the check items. It seems like there was a deliberate decision made to treat funds transfers differently. I think there was. The analogy here is limited to the notion in 501 that the parties can agree to make substantive changes to the substantive rights and obligations by contract. That's the limitation of our analogy here. I think... Go ahead. I'm sorry. Go ahead. I think there is a substantial difference between 670 and 674 between funds wire transfers and items and checks. I agree with that. On this separate contract issue that your friend raises over there, what would be the recovery if they prevailed on that? Is there a difference between how much they might be able to recover under this separate contract argument? If the court does not uphold the 30-day amendment to the contract, they would make an argument that they noticed the bank within the 12-month period under 505, but they did not notice the bank within the 90-day period found in 204. So hypothetically, they'd be entitled to the principal amount of the wire and not the interest. But not the interest. How much does that come to? I believe it was $650,000 in that range. $860,000? $860,000. $860,000. I'm sorry. Yeah. I got it. I switched the numbers. $860,000. Yes. So if we decide this crazy issue about limiting the one-year period and remand for this discovery problem, and it turns out they then get enough to prevail on the contract issue, there's still a dispute about the interest. So you two people aren't going to settle the case. I'm just thinking, why worry about this shortened period if on the contract thing, you might wind up in that discovery package, and I have no idea what it is. What if it turns out that it was internal bank employees that pulled this fraud, and it comes out in this evidence? Well, we'd be wasting our time worrying about a UCC problem when the case may go away anyway. It is not in the record, but there was a criminal investigation and prosecution. It did not involve the bank, but that is not in the record, nor did it involve any bank employees. It's not in the record. So... What about Mr. Paredes? I'm going way outside the record here to answer that question. Oh, okay. Well... The Miami-Dade... I thought I saw that in the record, but... Fair enough. The Miami-Dade State Attorney's Office entered a prosecution against an individual who's a co-defendant to the underlying civil action, Gherbeto Gamboa. Mr. Gamboa pled guilty in Miami-Dade Circuit Court a few months ago, and was sentenced to probation and restitution. He was also sentenced to cooperate with the Assistant State Attorney Economic Crimes Unit from Miami-Dade State Attorney's Office, and no claims, indictments, prosecutions, rest of it. He's a former BB&T employee, including Juan Martinez and Giancarlo Paredes. One of the cases you cite in your brief is the Cheese and Grill case? Yes. You recall it? I do. Okay. That case involved a situation where a client did not provide notice within a 30-day, a shortened 30-day period. I forget, did the Florida Appellate Court in that case directly address whether you could shorten the one-year period, or the parties just took it as a given that you could, and then argued whether or not there was notice? Do you recall? As I sit here today, I don't recall. I don't recall. I'm very familiar with that case. Was that a case, though, that involved fraudulent checks? Yeah, it was a check case, yes. Even though it's probably not directly analogous, I think you conceded previously. It was a check case, and the biggest part of that ruling, if I recall, had to do with whether the bank had a duty in negligence and tort to third parties. That was the portion of that case that it's most often cited for in Florida. I don't recall whether or not the court ruled on the 30-day notice, but I can tell the court, and we have cited substantial cases, that on check issues, and if it's a distinction, I understand that. But on check issues, the courts in Florida have ruled that that 30-day contract amendment is valid, and those rulings go back 25 to 30 years. That was about 13, 14 years ago that that case came out? Yes. And again, it was items. So we also wanted to talk a little bit about the notice issue. And here, plaintiff argues that actual notice is required. Both the definitions of notice in the UCC and in the operative statutes do not require actual notice. Plaintiff also argues that the Anderson case ... But isn't the argument a little bit more than that? In other words, it's not just, and I understand that that's part of the argument, but it's also that given what was done to the account, they couldn't have even gotten constructive notice because it was sent elsewhere, at least insofar as the statements were sent. I understand your argument about having online access to the accounts, but insofar as where the statements were sent, what email address they were sent to, the argument, at least I think the way it goes, is once the password and the address and the online account were changed, we didn't get those statements, and so there was no constructive notice to us. Okay. I have eight seconds left, but I'll ... No, go ahead. Go ahead. Thank you. So, it is not in contestation. It is in the record that in July of 2016, the plaintiffs said they were cut off from their online access and could not see their account statements online. It's also in the record and not in contest. The plaintiffs announced to the bank that they would take their account statements online through the online portal and didn't want hard copies mailed to them. It is not in contest that the first wire in this case was August 30th of 2016, the first accounts they dropped the next day on August 31st and would have been available on the online portal either on that day or within a couple days of August 31st. So, had they noticed the bank within 10 days, and this is an entirely different provision than the notice provision found in 505, had they noticed the bank under the contract as they're obligated to that they were not receiving their account statements online or within a 10-day period of when it was normally made available to them, this case wouldn't exist. The bank would have been able to take action on that, and it is not in dispute that they failed to do so. That has to do with their contractual obligation and a defense the bank has to their contractual obligations. How that affects notices is as follows. They're required to give 30 days notice. We have argued that their failure to notice us of the failure to get their online statements stops them from claiming they didn't get their notice within 30 days. Have I answered your question, Your Honor? Yeah, I understand. I understand. Okay. Thank you very much. I see I'm out of time. I would thank the court for its kind attention to this matter, and I would urge the court to consider affirming this matter. Thank you. Thank you. You've got five minutes, Mr. V. S. Mr. V. Sante. Just briefly. When does the time period commence? What triggers the 30 day, 90 day, or one year? It is when the statement is actually mailed and presumptively received. We have requested in discovery everything from every witness that we could possibly ask for to establish whether or not emails were actually sent directly to our client carrying the statement. But that's a factual question, right? That is a factual question. However, when the time period, because the question was whether there's actual notice or not. However, I do agree that irrespective of that, as Your Honor asked the question on 204, I think the answer may be a legal answer irrespective of the factual scenario as to whether or not the reduction from one year to 30 days is permissible. But I do want to make clear because of the facts involved that our clients and now some of the new evidence seems to demonstrate because the new evidence needs to be vetted, but seems to demonstrate clearly that the only emails that perhaps received something were the fraudulent emails. I mean, it's akin in terms of rebutting the presumption, which is part of the court order. It's akin to regular mail going to North Carolina instead of South Carolina or who knows where. Right. But his argument in part, in part, Mr. Hendricks' argument is that if all of the fraudulent activity prevented your client from receiving the statements, your clients had an obligation pursuant to the account agreements to tell the bank. And they did. And in his view, they didn't. Right. And that leaves you with a problem, according to him. Two issues related to that. Number one, testimony is clear that they did. They called in. Secondly, when with respect to commercial reasonableness. But, I mean, on that, isn't the record that they called in, but they weren't able to reach anyone until after the 30-day period? No. They called. Yes, they called. They were not able to reach anyone. And because of the limitations in terms of calls from Venezuela at the time, which were like calls when I was a kid back to Cuba, you had to wait online for an operator to get you through. It was impossible. Yet, they did leave messages at the bank. What they did not know is that the bank had instituted protocols prohibiting their staff from calling out to international numbers. So they're leaving messages telling the bank, can't get through into my account. Bank is saying, not going to answer you because my superiors say I can't call out. Which is in conflict with some of the other facts that they raised. But nevertheless, that seems to be the case. So notice, and by the way, in all of the records, there's no specific way that the contract says you must notify us. It doesn't say by email, and in fact, some of the originating documents when you open the account say, give us a call and have a telephone number to call. And that was sufficient. Now, with respect to actual notice versus the constructive notice, it is very important to note that from that moment forward, any email that went out, went to the wrong address, and the inability of our clients to actually check on their accounts prevented them from making any additional notice to the bank. So when the bank allows for a bank robber to walk in, because this is not a hack. This is someone literally walking into the bank and signing as if they were our client. And changing the security protocols, and at that point, locking out our clients. When that happens, the bank has effectively prohibited our client from seeing their statements, from seeing anything on their account. So with that said, the rest is clearly factual issues. But I thank the court for its time, and we have already requested the relief that we seek. If there are no other questions. Okay. Thank you both very much. Thank you. We appreciate it. We're going to take a five-minute break, and then we'll come back for the last case. All rise.